UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────────

RAHEIM WILLIAMS,

                     Petitioner,            08 Civ. 11356 (JGK)

          - against -                       OPINION AND ORDER

DALE A. ARTUS AND J.F. BELLNIER,

                     Respondents.

────────────────────────────────────

JOHN G. KOELTL, District Judge:

     This is a petition for habeas corpus pursuant to 28 U.S.C.
§ 2254 brought by New York State prisoner Raheim Williams (the
"petitioner").  After a jury trial, the petitioner was convicted
of six counts of Robbery in the First Degree and sentenced as a
second felony offender to six concurrent determinate prison
terms of twenty years and five years of post-release
supervision.  The petitioner claims (1) the police conducted an
investigatory lineup in violation of his Sixth Amendment right
to counsel; (2) the trial court failed to provide the
petitioner's defense counsel an opportunity to respond to jury
notes in violation of the petitioner's right to a fair trial;
(3) the trial court improperly failed to set aside the jury's
verdict based on juror misconduct; (4) the prosecution failed to
present legally sufficient evidence to support the petitioner's
conviction for aiding and abetting robbery; (5) the police
lacked probable cause for the petitioner's arrest; (6) the

petitioner was denied an independent source hearing; (7) the petitioner was denied a hearing to determine whether a photographic array was unduly suggestive; (8) the petitioner's trial counsel failed to provide adequate and effective assistance of counsel in violation of his Sixth Amendment right; and (9) the petitioner's appellate counsel also failed to provide adequate and effective assistance of counsel.

**I.**

**A.**

The evidence at trial was sufficient to find the following facts.

On October 19, 2004 at approximately 2:50 a.m., Yusef Perkins, Demetrias Relaford, Duval Hobson, and Michael Sparks were sitting on a bench on the corner of 129th Street and Saint Nicholas Terrace in Manhattan when a black Volkswagen Jetta with Connecticut license plates double parked in front of the bench. (Trial Tr. 317-18, 322-23.) Two men exited the Jetta with guns drawn. The driver remained inside. The two gunmen approached the group sitting on the bench and robbed them. The gunmen then told the victims, "You have five seconds to run." (Trial Tr. 80.) As the four men ran, the gunmen fired approximately five shots, wounding Relaford in the torso and Hobson in the left leg. (Trial Tr. 57, 84, 96-97.) The gunmen then returned to the Jetta and drove off.

Police Officers Iraina Stone and Hertelou Pierre were on patrol in the area at the time of the robbery.  The officers heard the gunshots and immediately drove toward the scene of the robbery.  At the corner of Saint Nicholas Terrace and 127th St., Officer Stone observed a black Jetta with Connecticut plates approaching a stop sign.  It was the only car traveling on the street.  As the Jetta turned the corner, Officer Stone was able to get a clear look at the driver—a black male, approximately twenty or thirty years old, clean shaven, with a short haircut, and protruding eyes—who Officer Stone later identified as the petitioner.  (Trial Tr. 189.)  Officer Stone also took note of the Jetta's license plate number, RXJ-872.  After the car had passed, Officers Stone and Hertelou received a radio transmission from Sergeant John Dilapi, who also responded to the gunshots.  Sergeant Dilapi had a brief conversation with the injured victims near the scene of the incident, and the victims told him that the gunmen had come out of a black Jetta with Connecticut plates.  (Trial Tr. 118-19.)  Sergeant Dilapi then informed police to be on the alert for such a vehicle.  Officers Stone and Pierre then tried unsuccessfully to locate the Jetta they had seen minutes earlier.  (Trial Tr. 148-49.)

At the scene, Officer Jason Medina ran the license plate number Officer Stone had observed, RXJ-872, but received no results.  Later that morning, another officer, Officer John

Ford, informed Officer Medina that on Connecticut license plates, numbers precede letters.  Officer Medina then ran license plate number 872-RXJ and found that it belonged to a black Volkswagen Jetta that was registered to the petitioner. (Trial Tr. 296-98.)

Based on this information, Detective Giselle Moyano assembled a photo array containing photographs of the petitioner and five other men.  Detective Moyano then asked Officer Stone if any of the men in the photo array looked like the driver of the black Jetta.  Officer Stone selected two photos, including the petitioner's.  (Trial Tr. 244-46.)

After Officer Stone identified the petitioner in the photo array, Detective Alex Argiro discovered that the petitioner's black Jetta had recently received some parking tickets near the Astoria Housing Development in Queens.  (See Trial Tr. 418.) Detective Argiro then searched the area around the Housing Development and, at approximately 11:30 p.m., located the petitioner's Jetta at the corner of 27th Avenue and 3rd Street. Video surveillance tapes revealed that the Jetta arrived there at approximately 4 a.m.  (Trial Tr. 450.)  When the petitioner returned to his car the next morning, Detective Argiro arrested him and took him to the precinct.

At the precinct, Detective Argiro conducted a lineup with the petitioner and five other individuals.  (Trial Tr. 431-32.)

Officer Stone again identified the petitioner as the driver of the black Jetta.

B.

On February 13, 2004, a New York County Grand Jury returned a twenty-eight count indictment against the petitioner.  The indictment included sixteen counts of Robbery in the First Degree and twelve counts of Robbery in the Second Degree.  The petitioner pleaded not guilty.

In a pre-trial hearing held on October 21-22, 2004, the petitioner moved to suppress the evidence that Officer Stone had identified him in the lineup.  The petitioner argued that the lineup was conducted in violation of his right to counsel.  The petitioner testified that he told Detective Argiro that he had an attorney, Brian Kaplan, who was representing him on an unrelated matter and that he wanted his attorney present for the lineup.  (Hr'g Tr. 75.)  The petitioner further testified that Detective Argiro told him, "[W]e don't have to call your attorney." (Hr'g Tr. 75.)  The petitioner offered as evidence a photocopy of one of Kaplan's business cards that the petitioner had with him at the time of the arrest, on which someone had written, "found in the perp's pocket." (See Hr'g Tr. 77-78; Br. for Resp't 10.)  Detective Argiro, however, testified that the petitioner never requested an attorney's presence at the lineup. (Hr'g Tr. 44-45.)  Detective George Fountoulakis, who was also

present for the lineup, likewise testified that the petitioner did not request to have an attorney present. (Hr'g Tr. 67.)

The hearing court denied the petitioner's motion to suppress the identification evidence. (See Decision of the New York County Supreme Court Denying Petitioner's Motion to Suppress ("Motion to Suppress Decision") 5.)  The court found the detectives' testimony credible and concluded that the detectives acted appropriately in conducting the lineup in the absence of counsel. (Motion to Suppress Decision 4.)  The hearing court also concluded that there was probable cause for the petitioner's arrest and that the lineup procedures were reasonable and not unduly suggestive.  (Motion to Suppress Decision 3-4.)

At trial, in addition to the facts described above, the prosecution presented evidence that the petitioner previously had lived in the area of the robbery and that he previously had quarreled with two of the robbery victims, Perkins and Hobson, including one incident where Perkins punched the petitioner in the face and pulled a knife on him and another incident where Hobson drove the petitioner's car without his permission. (Trial Tr. 9, 319-20.)

On May 25, 2005, the jury convicted the petitioner of six counts of Robbery in the First Degree.  (Trial Tr. 682, 691-92.) Prior to sentencing, the petitioner moved to set aside his

conviction pursuant to New York Criminal Procedure Law § 330.30,
alleging juror misconduct.  The petitioner claimed that, during
the trial, the jury foreperson, Gina Peterson, discussed the
trial with her friend, Shanelle Conde.  During the conversation,
Peterson learned that Conde was the petitioner's niece.  The
petitioner argued that Peterson's conduct affected his right to
a fair trial because Peterson had improperly discussed the trial
during its pendency and because, after learning that Conde was
the petitioner's niece, Peterson failed to disclose to the court
that she now had a personal connection to the petitioner.
(Affirmation in Support of Mot. to Set Aside the Verdict ¶¶ 1-
2.)  The court denied the petitioner's motion, reasoning that
Peterson's conversation with Conde, "although imprudent, was an
innocuous private conversation that revealed no hidden bias or
premature deliberation on the part of the juror."  (Decision of
the New York County Supreme Court Denying the Petitioner's
Motion to Set Aside the Verdict 3.)

    The petitioner then filed a direct appeal to the New York
State Supreme Court, Appellate Division, First Department and
also cited additional grounds for appeal in a pro se
supplemental brief.  The court unanimously affirmed the
petitioner's conviction.  See People v. Williams, 856 N.Y.S.2d
570, 570 (App. Div. 2008).  The court rejected all of the
petitioner's claims, including his claim that the trial court

improperly denied his defense counsel the opportunity to respond to jury notes.  See id.  The petitioner's application for leave to appeal to the New York State Court of Appeals was denied on June 16, 2008.  See People v. Williams, 892 N.E.2d 413 (N.Y. 2008).  This petition for a writ of habeas corpus followed.

## II.

### A.

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief to a state prisoner on a claim that was adjudicated on the merits in state court only if it concludes that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2); see also Knowles v. Mirzayance, 129 S. Ct. 1411, 1414-15 (2009).

A state court decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to" the Supreme Court's result.

Williams v. Taylor, 529 U.S. 362, 405 (2000).  A state court decision involves "an unreasonable application of . . . clearly established Federal law" when the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."  Id. at 407-08.

To meet that standard, "the state court decision [must] be more than incorrect or erroneous;" it "must be objectively unreasonable."  Lockyer v. Andrade, 538 U.S. 63, 75 (2003).  "[I]t is well established in [this] [C]ircuit that the objectively unreasonable standard of § 2254(d)(1) means that [a] petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief."  Cotto v. Herbert, 331 F.3d 217, 248 (2d Cir. 2003) (internal citations and quotation marks omitted).

Because the petitioner is proceeding pro se, his petition is "read liberally and should be interpreted 'to raise the strongest arguments that [it] suggest[s].'"  Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)); see also Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (per curiam) (holding that pro se allegations of habeas corpus petitioners are to be liberally construed); Faison v. McKinney, No. 07 Civ. 8561, 2009 WL 4729931, at **3-4 (S.D.N.Y. Dec. 10, 2009); Williams v. Breslin, 274 F. Supp. 2d 421, 425 (S.D.N.Y. 2003).

**B.**

The petitioner first argues that the police violated his Sixth Amendment right to counsel by conducting the investigatory lineup without consulting his attorney.  The petitioner's argument is without merit.

On a petition for federal habeas relief, a district court is "limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  Estelle v. McGuire, 502 U.S. 62, 68 (1991); see also 28 U.S.C. § 2254(a).  With respect to the constitutional right to counsel, "it has been firmly established that a person's Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him."  Kirby v. Illinois, 406 U.S. 682, 688 (1972).  While actions such as a "formal charge, preliminary hearing, indictment, information, or arraignment" may trigger the right to counsel, an identification proceeding alone does not.  Id. at 689-90; see Boyd v. Henderson, 555 F.2d 56, 61 (2d Cir. 1977).  Here, the record is clear that no formal proceedings were initiated against the petitioner at the time of the lineup.  Therefore, the petitioner had no Sixth Amendment right to counsel at that time.  The petitioner's argument therefore is without merit because it fails to show that the lineup was conducted in violation of the Constitution or federal law.

The petitioner also argues that even if he had no Sixth Amendment right to counsel at that time, his constitutional due process rights were violated.  The petitioner argues that New York law created a constitutionally cognizable "liberty interest," see Wilkinson v. Austin, 545 U.S. 209, 221 (2005), because New York law provides a right to counsel at an investigatory lineup when "a defendant in custody, already represented by counsel on an unrelated case, invokes the right by requesting his or her attorney." People v. Mitchell, 2 N.Y.3d 272, 274 (2004).  The detectives, the petitioner argues, violated that liberty interest by refusing to honor the petitioner's request to have his attorney present for the lineup.  Even assuming the validity of the petitioner's legal argument, to prevail on the argument the petitioner first must prove that the hearing court's finding that the petitioner had not requested his attorney's presence at the lineup was based on "an unreasonable determination of the facts in light of the evidence presented."  28 U.S.C. § 2254(2)(d)(2).  The petitioner cannot bear this burden.

On a habeas petition, "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." Id. § 2254(e)(1).  Here, the only evidence the petitioner offered to

prove that he had requested his attorney's presence at the lineup was his own testimony and a copy of his attorney's business card, which the police had taken from him after his arrest.  The petitioner's evidence is insufficient to overturn the hearing court's determination that the detectives' testimony was credible and that the petitioner had not requested his attorney's presence prior to the lineup.  Accordingly, the petitioner's first claim for habeas relief is denied.

C.

The petitioner next argues that the trial court's failure to consult with his attorney prior to responding to jury notes violated his right to a fair trial.  The petitioner claims that the jury's notes requested substantive information and that the court's response to the notes affected the jury's deliberative process in a way that violated his right to a fair trial.  The petitioner's argument fails, however, because it is procedurally barred by an independent and adequate state law ground.

It is well-settled that where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental

miscarriage of justice." <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991); <u>see also</u> <u>Lee v. Kemna</u>, 534 U.S. 362, 375 (2002); <u>Cotto v. Herbert</u>, 331 F.3d 217, 238 (2d Cir. 2003); <u>Faison</u>, 2009 WL 4729931, at *10.   To be considered an independent and adequate state ground, the state law must be "'firmly established and regularly followed' in the specific circumstances presented in the case."   <u>Cotto v. Herbert</u>, 331 F.3d 217, 240 (2d Cir. 2003) (citing <u>Lee</u>, 534 U.S. at 386-87).   While violations of such state rules normally will preclude federal habeas review, there are "exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question."   <u>Lee</u>, 534 U.S. at 376.

In this case, the Appellate Division rejected the petitioner's claim because the petitioner's counsel failed to make a contemporaneous objection to the trial court's handling of the jury notes, thus rendering the petitioner's claim unpreserved.   <u>Williams</u>, 856 N.Y.S.2d at 571.   The Court of Appeals for the Second Circuit has acknowledged that New York's contemporaneous objection rule, on which the Appellate Division relied, is a firmly established, independent, and adequate state ground that bars habeas review of the merits of a constitutional claim.   See <u>Garcia v. Lewis</u>, 188 F.3d 71, 78-79 (2d. Cir. 1999); <u>see also</u> <u>Simpson v. Portuondo</u>, No. 01 Civ. 8744, 2002 WL 31045862, at *4 (S.D.N.Y. June 4, 2002).

Nonetheless, the petitioner argues that his case is one of the "exceptional cases" where an adequate state law ground should not bar consideration of a constitutional claim on habeas review.  The petitioner argues that the contemporaneous objection rule should not bar his claim because the rule is not "firmly established and regularly applied" in cases such as his, thus rendering the Appellate Division's application of the rule inadequate to support the court's ruling.  The petitioner argues that the trial judge's failure to provide counsel with notice of and an opportunity to respond to the jury's notes constituted a mode of proceedings error under <u>People v. O'Rama</u>, 78 N.Y.2d 270, 279 (1991), for which contemporaneous objections are not required.

Under New York law, a trial judge's failure to provide defense counsel access to and an opportunity to respond to a jury's notes presents a question of law on appeal, notwithstanding the defense counsel's failure to raise a contemporaneous objection.  <u>See</u> <u>id.</u>  However, the law does not require adherence to any strict set of procedures; it requires only that the trial judge meet certain "core responsibilities" of providing notice and an opportunity to respond.  <u>See</u> <u>People v. Kisoon</u>, 8 N.Y.3d 129, 135 (2007).  When those "core responsibilities" are met, any objections to the trial court's handling of the jury notes must be preserved with a

14

contemporaneous objection.  See id.  Here, the Appellate
Division held that the trial court met its "core
responsibilities."  Williams, 856 N.Y.S.2d at 571.  There is no
reason to disturb this determination.  All of the jury's notes
were read in open court and it is unclear what, if any, effect
the defense counsel's input could have had on the trial court's
responses.  Thus, there is no merit to the petitioner's argument
that the Appellate Division's rejection of his claim did not
rest on an independent and adequate state ground.  Accordingly,
the petitioner's second claim is defaulted, and this Court may
only grant habeas relief if the petitioner can demonstrate
either (1) cause for and prejudice from the default, or (2) that
a fundamental miscarriage of justice will result if this Court
fails to hear the federal claim.  See, e.g., Colon v. New York,
No. 08 Civ. 0170, 2009 WL 1116478, at *3 (S.D.N.Y. Apr. 27,
2009).

     The petitioner can demonstrate cause only if he "can show
that some objective factor external to the defense impeded
counsel's efforts to comply with the State's procedural rule."
Murray v. Carrier, 477 U.S. 478, 479 (1986).  This cause "must
be something external to the petitioner, something that cannot
fairly be attributed to him."  Coleman, 501 U.S. at 753.  To
complete the cause and prejudice test, the petitioner must also
establish that he suffered actual prejudice.  To establish

actual prejudice, the petitioner must show that the
constitutional violation alleged "worked to his actual and
substantial disadvantage, infecting the entire trial with error
of constitutional dimensions." United States v. Frady, 456 U.S.
152, 170 (1982); see also Murray, 477 U.S. at 494; Faison, 2009
WL 4729931, at *11.

Here, the petitioner can establish neither cause nor
prejudice.  The petitioner has made no attempt to explain the
cause for his default nor has he suffered actual prejudice.  At
the petitioner's trial, the trial judge set out his policy for
handling jury notes.  The judge encouraged counsel for both
sides to read any note that the jury might send out and to
notify the court if anything was not "self-evident."  (Trial Tr.
673-74.)  Nothing in the record suggests that the judge denied
the petitioner's counsel this opportunity.  In fact, the record
shows that the petitioner's counsel participated in the court's
response to at least one of the jury's notes because the trial
judge pointed out that "the reporter and the attorneys" worked
together to find the testimony that the jury requested.  (Trial
Tr. 684-85.)  Moreover, the petitioner has made no suggestion of
what impact, if any, his counsel's input would have had on the
court's responses to the jury's notes.  For example, in response
to the jury's inquiry about the photo array, the trial judge
informed the jury that he could not give them any information

16

that was not in evidence.  (Trial Tr. 678.)  Further, when the
jury asked for the definition of "acting in concert," the judge
read an instruction that was substantially the same as the one
he read to the jury prior to deliberations.  (Trial Tr. 686-87;
compare Trial Tr. 649-52, with Trial Tr. 687-90.)  The
petitioner has made no attempt to explain how the trial judge's
decision simply to remind the jury that it was permitted only to
consider items already in evidence deprived him of a fair trial.
Thus, any error in failing to get input from the petitioner's
counsel prior to responding to the jury's notes was harmless.
His second claim for habeas relief is barred on the basis of an
independent and adequate state law ground.

     Moreover, the second claim would fail on the merits.  The
petitioner relies on New York state cases and argues that the
trial judge violated the procedures to be followed by New York
state trial judges.  He has failed to show that the procedure
followed by the trial court, which included reading the notes
aloud in open court, violated any clearly established federal
law as determined by the Supreme Court.  The claim therefore
fails on the merits.

### D.

     The petitioner next argues that the state court erred when
it denied his motion to set aside the verdict pursuant to New
York Criminal Procedure Law § 330.30 based on juror misconduct.

The petitioner argues that, at a minimum, he is entitled to a hearing to determine whether the alleged juror misconduct violated his right to a fair trial.  The petitioner's argument, however, is unavailing because the state courts' rejection of his claim was not contrary to, nor an unreasonable application of, clearly established federal law.

As an initial matter, the state argues that the petitioner's juror misconduct claim is unexhausted because he failed to raise it in constitutional terms in state court and that habeas review of the claim therefore should be barred because the petitioner can no longer raise it in state court. Even if, however, a claim is unexhausted, 28 U.S.C. § 2254(b)(2) provides that "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  If the unexhausted claims are "plainly meritless," the district court can dismiss these claims on the merits.  Rhines v. Weber, 544 U.S. 269, 277 (2005).  The petitioner's claim is plainly meritless and therefore is denied on the merits.

A trial court is required to conduct a post-verdict evidentiary hearing on the issue of juror misconduct only when "there is clear, strong, substantial and incontrovertible evidence . . . that a specific, nonspeculative impropriety has occurred which could have prejudiced the trial of a defendant."

United States v. Sun Myung Moon, 718 F.2d 1210, 1234 (2d Cir. 1983) (citing King v. United States, 576 F.2d 432, 438 (2d Cir. 1978)).  This high standard reflects the judicial desire to avoid the "evil consequences" associated with "post-verdict inquiries," such as "subjecting juries to harassment, inhibiting juryroom deliberation, burdening courts with meritless applications, increasing temptation for jury tampering and creating uncertainty in jury verdicts."  United States v. Ianniello, 866 F.2d 540, 543 (2d Cir. 1989).  Moreover, "[t]he trial judge is accorded broad discretion in treating charges of jury misconduct."  United States v. Sattar, 395 F. Supp. 2d 66, 73 (S.D.N.Y. 2005) (citing Wheel v. Robinson, 34 F.3d 60, 65 (2d Cir. 1994)).

    Here, the petitioner has not shown that the state courts' rejection of his claim was contrary to, or an unreasonable application of, this standard.  Both the trial and appellate courts reasonably concluded that the petitioner failed to show any prejudice as a result of the alleged juror misconduct.  The petitioner has not shown that the jury foreperson, Gina Peterson, was influenced by the conversation she had with her friend Shanelle Conde, during which Peterson learned that Conde was the petitioner's niece.  Further, Conde admitted that she did not ask Peterson to decide in the petitioner's favor, and that Peterson never suggested that the fact that the petitioner

was Conde's uncle would influence her decision.   In addition,
the petitioner has not alleged that Peterson was dishonest
during voir dire or that she in any other way deceived the
court.   As both the trial and appellate courts pointed out,
Peterson's conversation with Conde, if anything, would have
benefited the petitioner.   Williams, 856 N.Y.S.2d at 572;
(Decision of the New York Supreme Court Denying the Petitioner's
Motion to Set Aside the Verdict 3-4.)   Thus, the state courts'
conclusion that the petitioner's claim did not warrant further
investigation was not contrary to, nor an unreasonable
application of, clearly established federal law.

Peterson's second conversation with Conde similarly fails
to entitle the petitioner to relief.   The petitioner argues that
he is entitled to a hearing on the issue of juror misconduct
because Peterson told Conde after the verdict that Peterson and
two other jurors did not believe that the prosecution proved its
case "beyond the shadow of a doubt."   (Affirmation in Support of
Mot. to Set Aside the Verdict (Letter of Shanelle Conde).)   This
is plainly an impermissible attempt to impeach the jury's
verdict, and the state court's rejection of the petitioner's
claim was not a violation of clearly established federal law.
It is well settled that "[a]ffidavits and statements by jurors
may not ordinarily be used to impeach a verdict once the jury
has been discharged unless extraneous influence has invaded the

jury room." Jacobson v. Henderson, 765 F.2d 12, 14 (2d Cir. 1985) (per curiam) (citing Stein v. New York, 346 U.S. 156, 178 (1953)); see Sattar, 395 F. Supp. 2d at 73. Therefore, the petitioner's claim that he is entitled to habeas relief based on juror misconduct is denied.

### E.

The petitioner raises six additional grounds for habeas relief, all of which were rejected by the Appellate Division, and all of which are similarly without merit here.

### 1.

The petitioner first argues that the prosecution failed to present legally sufficient evidence to support his conviction for aiding and abetting robbery. The petitioner does not argue that the evidence was insufficient to prove that he was the driver of the black Jetta used to transport the gunmen to and from the crime scene; rather, the petitioner argues that the prosecution failed to present sufficient evidence to prove he was a knowing participant in the crime.

A petitioner challenging the sufficiency of the evidence supporting the conviction must overcome a "very heavy burden." Knapp v. Leonardo, 46 F.3d 170, 178 (2d Cir. 1995) (internal citations and quotation marks omitted). A reviewing court must view "the evidence in the light most favorable to the prosecution," and may only grant habeas relief if the

petitioner has shown that "upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 324 (1979); see also Hawkins v. West, 706 F.2d 437, 439 (2d Cir. 1983). In making this determination, a reviewing court may not "make its own subjective determination of guilt or innocence." Herrera v. Collins, 506 U.S. 390, 402 (1993) (quoting Jackson, 443 U.S. at 320 n.13). To the contrary, the reviewing court must defer to the jury in making "assessments of the weight of the evidence or the credibility of witnesses" and construe "all possible inferences that may be drawn from the evidence" in the prosecution's favor. Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996). "Guilt beyond a reasonable doubt may be established entirely by circumstantial evidence, and this evidence must not be reviewed piecemeal, but rather as a whole." Id. (internal citations omitted); see also Faison, 2009 WL 4729931, at *4.

In reviewing the legal sufficiency of the evidence of a state conviction, this Court looks first to state law to determine the elements of the crime. Quartararo v. Hanslmaier, 186 F.3d 91, 97 (2d Cir. 1999). Under the New York Penal Law, a person is guilty of Robbery in the First Degree when "he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he or

another participant in the crime . . . [c]auses serious physical injury" to a non-participant, or "[i]s armed with a deadly weapon."  N.Y. Penal Law § 160.15(1)-(2) (McKinney 2009). Further, a person is liable for the criminal conduct of another "when, acting with the mental culpability required for the commission thereof, he . . . importunes[] or intentionally aids such person to engage in such conduct."  Id. § 20.00.

Viewed in the light most favorable to the prosecution, the evidence produced at trial was sufficient for a rational jury to conclude beyond a reasonable doubt that the petitioner intentionally aided the gunmen in forcibly stealing property from the four victims.  From the evidence at trial, a reasonable jury could have found that the petitioner, knowing a robbery was about to be committed, drove the gunmen to the scene, waited while they robbed their victims, and then drove the gunmen from the scene.  The victims stated that their attackers arrived and fled in a black Jetta with Connecticut license plates.  And minutes after the incident, Officer Stone saw the petitioner driving a black Jetta with Connecticut license plates in the area of the robbery.  Moreover, the Jetta that Officer Stone observed belonged to the petitioner and, according to video surveillance tapes, the same Jetta arrived at the Astoria Housing Project in Queens approximately one hour after the robbery.  Further, a reasonable jury could have concluded that

23

the petitioner had a motive to attack these men.  The evidence
showed that the petitioner had previously quarreled with both
Perkins and Hobson, including one incident where Perkins punched
the petitioner in the face and pulled a knife on him and another
incident where Hobson drove the petitioner's car without his
permission.  Although the petitioner argues that there are other
possible explanations for why he stopped his Jetta in front of
the bench where Perkins, Hobson, and the two other men were
sitting, those other explanations do not render the evidence
legally insufficient to support the petitioner's conviction.
The petitioner's attempt to impeach the evidence against him
fails to show that no reasonable jury could have found that he
intentionally aided and abetted robbery.  Therefore, his claim
for habeas relief based on the legal insufficiency of the
evidence is denied.

### 2.

The petitioner next argues that the police violated his
Fourth Amendment rights because they lacked probable cause for
his arrest.

The petitioner's Fourth Amendment challenge, however, is
not reviewable in a federal habeas proceeding, because the
petitioner had a full and fair opportunity to litigate his
Fourth Amendment claims during a pretrial hearing based on a
motion to suppress evidence.  Stone v. Powell, 428 U.S. 465,

24

481-82 (1976); see also Salcedo v. Smith, No. 05 Civ. 3497, 2006
WL 1644700, at *3 (S.D.N.Y. June 13, 2006).   Collateral review
of a Fourth Amendment claim in a habeas petition is only
appropriate where (1) the state provides no corrective
procedures at all to redress Fourth Amendment violations, or (2)
where the state provides such procedures but the petitioner was
precluded from using them "because of an unconscionable
breakdown in the underlying process."   Capellan v. Riley, 975
F.2d 67, 70 (2d Cir. 1992) (citing Gates v. Henderson, 568 F.2d
830, 840 (2d Cir.1977) (en banc)); McPhail v. Warden, Attica
Corr. Facility, 707 F.2d 67, 70 (2d Cir. 1983); see also Wicks
v. Miller, No. 05 Civ. 5341, 2007 WL 1434992, at *7 (S.D.N.Y.
May, 15, 2007).

The Second Circuit Court of Appeals has approved of New
York's procedure for litigating Fourth Amendment claims, as
embodied in New York Criminal Procedure Law § 710.10 et seq.,
see Capellan, 975 F.2d at 70 n.1, and the petitioner took
advantage of this procedure by filing a motion to suppress
evidence.   The petitioner's motion resulted in a pretrial
hearing on the issue and a conclusion by the hearing court that
there was probable cause for the petitioner's arrest.   Moreover,
the petitioner raised his Fourth Amendment claim on direct
appeal, and the Appellate Division rejected it.   The petitioner

has shown no "unconscionable breakdown" in this procedure, and therefore review of his Fourth Amendment claim is barred.

**3.**

The petitioner next argues that he was entitled to an independent source hearing to determine whether Officer Stone's identification of him should have been excluded at trial.  The petitioner's argument, however, is without merit.

An independent source hearing is necessary only when a hearing court has determined that pre-trial identification procedures were unduly suggestive.  See United States v. DiTommaso, 817 F.2d 201, 213 (2d Cir. 1987); United States v. Archibald, 734 F.2d 938, 941 (2d Cir. 1984); Gossett v. Henderson, No. 87 Civ. 5878, 1991 WL 135601, at *4 (S.D.N.Y. July 18, 1991) ("[S]ince the lineup procedure was not suggestive, an independent source is not required for the in-court identification.").  In this case, the hearing court determined that the pre-trial identification procedures were not unduly suggestive, and that conclusion was not an unreasonable application of clearly established federal law to the facts, or an unreasonable determination of the facts.  Therefore, the petitioner was not entitled to an independent source hearing. Accordingly, his claim for habeas relief on that ground is denied.

**4.**

The petitioner next argues that he was denied a hearing to determine whether the photographic array was unduly suggestive. His argument, however, is without merit because he in fact received a hearing on his motion to suppress the evidence of both the photographic array and the lineup.  Moreover, the Appellate Division rejected the petitioner's claim, and the court's decision was not contrary to, or an unreasonable application of, clearly established federal law.  In any event, the photographic array did not appear unduly suggestive. Detective Moyano testified that a computer program generated the array based on the petitioner's physical characteristics.  (Hr'g Tr. 13.)  Further, the fact that Officer Stone selected photographs of two individuals that she believed resembled the driver of the Jetta suggests that the array did not single out the petitioner for identification.  Therefore, there is no merit to the petitioner's claim.

**5.**

The petitioner next argues that he was denied effective assistance of trial counsel because his attorney failed to (1) move to dismiss the indictment on the ground that the evidence was legally insufficient; (2) request an independent source hearing; and (3) request a hearing to determine whether the

photographic array was unduly suggestive.  The petitioner's
claims are without merit.

In order to prove ineffective assistance of counsel, a habeas
petitioner must show that "(1) counsel's performance was
deficient and (2) the deficient performance prejudiced the
defense."  Bunkley v. Meachum, 68 F.3d 1518, 1521 (2d Cir.
1995) (citing Strickland v. Washington, 466 U.S. 668, 687
(1984)).  Meeting the first prong of the Strickland test
"requires showing that counsel made errors so serious that
counsel was not functioning as the 'counsel' guaranteed the
defendant by the Sixth Amendment."  Strickland, 466 U.S. at
687.  To satisfy the second prong of the test, the petitioner
must show that "there is a reasonable probability that, but for
counsel's unprofessional errors, the result of the proceeding
would have been different."  Id. at 694; see also Dozier v.
Walsh, No. 08 Civ. 4384, 2009 WL 1492217, at *2 (S.D.N.Y. May
28, 2009).

Here, the state court's rejection of the petitioner's
ineffective assistance of trial counsel claim was not contrary
to, or an unreasonable application of, Strickland.  Contrary to
the petitioner's assertion, the record reflects that the
petitioner's counsel in fact moved to dismiss the charges based
on the legal insufficiency of the evidence.  (See Trial Tr.
476, 553.)  Both at the close of the prosecution's case and at

the close of the evidence, the petitioner's counsel moved to dismiss the indictment, first because the prosecution failed "to [make] out a prima facie case of [the petitioner's] involve[ment] in any of the robberies," and second because the prosecution had "not proved their case beyond a reasonable doubt." (Trial Tr. 476, 553.) The petitioner's counsel also sought and received a hearing on the petitioner's motion to suppress identification evidence, including the photographic array and the lineup. And as discussed above, because the hearing court determined that the identification procedures were not unduly suggestive, an independent source hearing was not warranted. Thus, the record shows that the petitioner's counsel performed the precise tasks that the petitioner here faults his counsel for failing to perform. The petitioner therefore cannot claim that his trial counsel was ineffective because his counsel in fact made the motions that the petitioner claims were not asserted. Moreover, there is no reasonable probability that, but for the petitioner's counsel's conduct, the result of the petitioner's proceedings would have been different. Accordingly, the petitioner's claim of ineffective assistance of trial counsel is denied.

**6.**

The petitioner also argues that he was denied effective assistance of appellate counsel because his appellate counsel

29

failed to raise the six claims the petitioner presented in his pro se brief.  The petitioner, however, has not exhausted his claim in state court because he did not file a coram nobis petition.  See Rolle v. West, No. 05-CV-591, 2006 WL 2009101, at *2 (E.D.N.Y. May 28, 2009) (citing Garcia v. Scully, 907 F. Supp. 700, 706-07 (S.D.N.Y. 1995)) (noting that a coram nobis petition is the only way to exhaust a claim of ineffective assistance of appellate counsel).

When a court is presented with a habeas petition that includes both exhausted and unexhausted claims, it has the power to stay all the claims and allow the petitioner to return to state court to litigate the unexhausted claims.  Rhines, 544 U.S. at 277.  However, 28 U.S.C. § 2254(b)(2) provides that "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  If the unexhausted claims are "plainly meritless," the district court should dismiss these claims on the merits.  Rhines, 544 U.S. at 277; see also Dozier, 2009 WL 1492217, at *3.

Here, the petitioner's claim is plainly meritless.  The test for ineffective assistance of appellate counsel is the same two part test described above for ineffective assistance of trial counsel.  In addition, to establish defective performance of appellate counsel for failure to raise specific issues, the

30

petitioner must show that "counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).  The failure to raise every non-frivolous issue is not enough.  Id. (citing Jones v. Barnes, 463 U.S. 745, 754 (1983)).  Further, to establish prejudice, the petitioner must show a reasonable probability that the omitted arguments "'would have been successful before the [state's highest court].'"  Id. at 534 (quoting Claudio v. Scully, 982 F.2d 798, 803 (2d Cir. 1992)) (alteration in original).

Here, the petitioner's appellate counsel reasonably focused on three arguments:  (1) that the petitioner was denied his right to counsel at the investigatory lineup; (2) that the trial court improperly denied the petitioner's trial counsel the opportunity to respond to jury notes; and (3) that the trial court erred by denying the petitioner's motion for a new trial based on juror misconduct.  These arguments were not weaker than those the petitioner asserted in his pro se brief.  Moreover, the Appellate Division considered and rejected the petitioner's pro se claims, and the New York Court of Appeals declined to review the claims.  Thus, the petitioner cannot show that his appellate counsel "omitted significant and obvious issues" or that the omitted arguments had a reasonable probability of succeeding before the appellate court.  Accordingly, the

petitioner's claim for habeas relief based on ineffective
assistance of appellate counsel is denied.

### CONCLUSION

For the reasons explained above, the petition pursuant to
28 U.S.C. § 2254 is **denied**.  The Court declines to issue a
certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2)
because the petitioner has failed to make a substantial showing
of the denial of a constitutional right.  The Clerk is directed
to enter judgment dismissing the petition and closing this case.

**SO ORDERED.**

**Dated:    New York, New York**
**          March 5, 2010**

John G. Koeltl
United States District Judge

32